UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ESTATE OF JOHN A. GONZALES, et al., | Case No. 2:14-CV-1827 JCM (GWF) |
| Plaintiff(s), | ORDER |
| v. | |
| LAS VEGAS METROPOLITAN POLICE DEPARTMENT, et al., | |
| Defendant(s). | |

Presently before the court is defendants Las Vegas Metropolitan Police Department ("LVMPD") and Darrin Kaplan's motion for summary judgment. (ECF No. 62). Plaintiffs, the estate of John A. Gonzales and Terresa Gonzales, have not filed a response and the time to do so has passed.

**I.   Background**

On October 18, 2012, plaintiff Gonzales called 911 and reported that her husband, John Gonzales ("John"), was "threatening to hurt himself." (ECF No. 62 at Exh. 6). She reported that her sons were "trying to keep him from doing anything" because he had been "hitting and kicking things." (*Id.*). Plaintiff Gonzales also said, "I think he's having . . . a psychotic breakdown." (*Id.*).

Less than ten minutes later, defendant Kaplan, a LVMPD officer with special training in dealing with the mentally ill, arrived with Officer Danny Rose in order to determine whether a Legal 2000 was necessary. (*Id*. at Exh. 3). A Legal 2000 is an emergency admission of a person with an alleged mental illness for a medical evaluation pursuant to NRS. 433A.160. When defendant Kaplan and Officer Rose entered the home, they saw John at the end of a narrow hallway lying on the floor and aggressively kicking the wall. (*Id*. at Exh. 3). John had already suffered cuts

**James C. Mahan**
**U.S. District Judge**

1  to his hand and left eye. (*Id.* at Exh. 3). With the family's permission the officers approached John
2  and attempted to calm him down. (*Id.* at Exh. 3). John responded with profanity and did not
3  recognize that defendant Kaplan and Officer Rose were police officers. (*Id*. at Exh. 1). After a few
4  minutes, John began to threaten to shoot his family and the officers. (*Id*. at Exh. 3). Plaintiff
5  Gonzales and her son, Christopher, described defendant Kaplan's behavior up to this point as
6  "professional." (*Id*. at Exh. 1).

7  After the officers approached John, he attempted to crawl out of the hallway into a closed
8  room. (*Id*. at Exh. 3). By then the officers determined that probable cause existed to perform a
9  Legal 2000. (*Id*. at Exh. 3). They stood John up but he began to passively resist, so defendant
10 Kaplan placed John into handcuffs. (*Id*. at Exh. 3). John continued to threaten the officers and
11 Christopher stepped back because he was scared. (*Id*. at Exh. 5).

12 The officers escorted John down the hallway, but he turned and spit into defendant
13 Kaplan's face. (*Id*. at Exh. 3). At this point, the witnesses' recollection of the altercation differ.
14 Defendant Kaplan states that he raised his hands in order to prevent a further spitting incident, but
15 John attempted to head butt defendant Kaplan. (*Id*. at Exh. 3). As a result, John's head made contact
16 with defendant Kaplan's hand and the officers assisted John to the ground. (*Id.* at Exh. 3). John
17 never became unconscious. (*Id*. at Exh. 3). Plaintiff Gonzales did not witness any spitting or the
18 alleged strike, but she did hear a loud popping sound and someone yell for a spit mask. (*Id*. at Exh.
19 1). Christopher was eight feet away and had a clear view of the event. (*Id*. at Exh. 5). He claims
20 defendant Kaplan "cock back and hit [John]." (*Id*. at Exh. 5). Christopher further states that John
21 "was just knocked out cold, unconscious." (*Id*. at Exh. 5).

22 Frederick Kloss, a paramedic who responded to the call, was also in the hallway. (*Id.* at
23 Exh. 9). Kloss saw defendant Kaplan strike John as an immediate reaction to being spit in the face.
24 (*Id*. at Exh. 9). He denies that John went unconscious and described defendant Kaplan's reaction
25 as "human nature." (*Id*. at Exh. 9). Ryan Boyd, Kloss' partner, was also inside the house but did
26 not see the event; however he also claims that John did not become unconscious. (*Id*. at Exh. 9).

27 Afterwards, a picture of John was taken showing that he did not sustain any injuries to the
28 face. (*Id*. at Exh. 12). Moreover, the paramedics did not believe that John had any injuries. (*Id*. at

**James C. Mahan**
**U.S. District Judge**

- 2 -

Exh. 3). However, plaintiff Gonzales claims that the incident caused John to suffer a broken ankle and hip. (*Id*. at Exh. 1). Plaintiffs did not disclose any experts supporting their claim nor do they counter defendants' expert, who claims that defendant Kaplan could not have caused the injury.

On September 30, 2014, plaintiffs Gonzales and John filed the initial complaint in Nevada state court. *See* (*id*. at 11). On November 3, 2014, plaintiffs removed their case to this court. (ECF No. 1). After the removal, John died due to dilated cardio myopathy and cocaine intoxication. (ECF No. 62 at Exh. 2). Plaintiff Gonzales subsequently amended the complaint, adding herself as the administrator of John's estate. (ECF No. 48).

## II.     Legal Standard

Pursuant to Local Rule 7-2(d), an opposing party's failure to file a timely response to any motion constitutes the party's consent to the granting of the motion and is proper grounds for dismissal. LR 7-2(d). A court cannot, however, grant a summary judgment motion merely because it is unopposed, even where its local rules might permit it. *Henry v. Gill Indus., Inc.,* 983 F.2d 943, 949-50 (9th Cir. 1993); *see also Martinez v. Stanford*, 323 F.3d 1178, 1182 (9th Cir. 2003) (a district court cannot grant a motion for summary judgment based merely on the fact that the opposing party failed to file an opposition).

Even without an opposition, the court must apply standards consistent with Federal Rule of Civil Procedure 56, determining if the moving party's motion demonstrates that there is no genuine issue of material fact and judgment is appropriate as a matter of law. *Henry*, 983 F.2d at 950. *See also Clarendon Am. Ins. Co. v. Jai Thai Enters., LLC*, 625 F. Supp. 2d 1099, 1103 (W.D. Wash. 2009).

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

**James C. Mahan**
**U.S. District Judge**

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weight the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby,*

**James C. Mahan**
**U.S. District Judge**

*Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

**III.     Discussion**

Defendants argue that defendant Kaplan's use of force was reasonable and that plaintiffs' claims fail because they rely on the use of unreasonable force. (ECF No. 62 at 16–22). Defendant alternatively argues that even if Kaplan's use of force was unreasonable, qualified immunity would still protect him from plaintiffs' claims. (ECF No. 62 at 22-27). ). Plaintiffs did not respond to defendants' arguments.

The Fourth Amendment permits police officers to use only that force which is under the circumstances objectively reasonable in the course of effecting the seizure of a person or property. *Graham v. Connor,* 490 U.S. 386, 388–89 (1989); *Scott v. Henrich,* 39 F.3d 912, 914 (9th Cir. 1994), *cert. denied,* 515 U.S. 1159, (1995). Where the subject alleges the use of excessive force against him, the reasonableness of the force employed during his arrest or detention must be measured from the perspective of a reasonable law enforcement officer at the scene of the incident in question. *Graham v. Connor,* 490 U.S. at 396.

The analysis of whether a specific use of force was reasonable "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id*. at 396 (quoting *Tennessee v. Garner,* 471 U.S. 1, 8 (1985)). First, the court evaluates the severity of the intrusion on the individual's Fourth Amendment rights by assessing the "type and amount of force inflicted." *Glenn v. Washington Cnty.*, 673 F.3d 864, 871 (9th Cir. 2011) (citation and internal quotation marks omitted).

Second, the Court must assess the importance of the governmental interests at stake by evaluating three primary factors articulated in *Graham:* (1) whether the suspect posed an immediate threat to the safety of the officers or others; (2) the severity of the crime at issue; and (3) whether the suspect actively resisted arrest or attempted to evade arrest by flight. *Id.* at 872 (citing *Graham,* 490 U.S. at 396). The most important factor is whether the suspect poses an

**James C. Mahan**
**U.S. District Judge**

- 5 -

1 immediate threat to the safety of the officers or others. *Id.* (citation and internal quotation marks
2 omitted). In addition, when "the individual involved is emotionally disturbed, that is a factor that
3 must be considered in determining, under *Graham,* the reasonableness of the force employed."
4 *Drummond v. City of Anaheim*, 242 F.3d 1052, 1058 (9th Cir. 2013) (*quoting Deorle v. Rutherford*,
5 272 F.3d 1272, 1282-83 (9th Cir. 2001).

6 Finally, the court balances the gravity of the intrusion against the government's need for
7 the intrusion. *Id.* at 871 (quoting *Miller v. Clark Cnty.*, 340 F.3d 959, 964 (9th Cir. 2003)). The
8 reasonableness inquiry evaluates all the relevant objective facts and circumstances that confronted
9 the officers in each particular case, "judged from the perspective of a reasonable officer on the
10 scene, 'rather than with the 20/20 vision of hindsight.' " *Id.* (quoting *Graham,* 490 U.S. at 396).
11 "The calculus of reasonableness must embody allowance for the fact that police officers are often
12 forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly
13 evolving—about the amount of force that is necessary in a particular
14 situation." *Id.* (quoting *Graham*, 490 U.S. at 396–97).

15 Because the reasonableness balancing test "nearly always requires a jury to sift through
16 disputed factual contentions, and to draw inferences therefrom," courts should grant summary
17 judgment in excessive force cases "sparingly." *Drummond ex rel. Drummond v. City of*
18 *Anaheim,* 343 F.3d 1052, 1056 (9th Cir. 2003) (citation omitted). "This is because police
19 misconduct cases almost always turn on a jury's credibility determinations." *Id.* However, a court
20 may decide reasonableness as a matter of law if, "in resolving all factual disputes in favor of the
21 plaintiff, the officer's force was objectively reasonable under the circumstances." *Jackson v. City*
22 *of Bremerton,* 268 F.3d 646, 651 n. 1 (9th Cir. 2001) (citation omitted).

23 First, the court agrees that defendant Kaplan's intrusion on John's Fourth Amendment
24 rights was minimal because the defendant Kaplan's action was a spontaneous reaction to a battery.
25 *See Hobbs v. State*, 251 P.3d 177, 180 (Nev. 2011) (holding that spitting on another person
26 constitutes battery). Second, the *Graham* factors weigh in favor of the government's intrusion.
27 John, at the time, posed an immediate threat. He had threatened to kill the officers, attempted to
28

**James C. Mahan**
**U.S. District Judge**

- 6 -

make harmful physical contact, and resisted arrest. Furthermore, there is no crime at issue because the officers were conducting a Legal 2000, where John was in danger of further injuring himself.

The unfortunate incident between defendant Kaplan and John was largely a product of unfavorable circumstances. The rapid development of events along with the limited information available to the officers substantially increased the uncertainty of John's behavior. The situation was tense and defendant Kaplan made a split-second judgment to defend himself from a battery. In addition, defendant Kaplan immediately ceased using force once John stopped attempting to assault or batter him. Absent any countervailing evidence by plaintiffs, these facts convince the court that the government's need for intrusion was greater than the gravity of the intrusion, making defendant Kaplan's behavior that of a reasonable law enforcement officer. Accordingly, the court finds the defendant Kaplan used reasonable force.

Plaintiff's remaining claims rely on the court finding that Kaplan used unreasonable force. Because the court finds that defendant Kaplan used reasonable force, those claims also fail. Therefore, the court grants defendants' motion for summary judgment in its entirety.

**IV.    Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendants LVMPD and Darrin Kaplan's motion for summary judgment (ECF No. 62), be, and the same hereby is, GRANTED.

DATED August 1, 2016.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**

- 7 -